### CLEVELAND, C., C. & ST. L. RY. v. MARY S. BRADFORD ET AL.

1. **Railways not Compelled to Construct Crossings for Abutting Owners of Land Used for Industrial Purposes.**

   Section 8858 G. C., providing for the construction of private crossings for abutting owners of tracts of fifteen acres or more through which a railway passes, has reference to farm crossings where the two parcels so divided are used in a reciprocal or interdependent way, and not to tracts of land used for industrial purposes.

2. **Private Crossing Denied as Necessity if Land Accessible to Highway.**

   A private crossing can not be required as a way of necessity, where the tract on either side is accessible to a highway, not as convenient perhaps as the short-cut desired, but affording ample and much safer ingress and egress.

3. **Presumption that Compensation Was Made Originally When the Tract Was Divided into Two Parcels.**

   A presumption arises in such a case that the inconvenience arising from the division of a tract into two parcels by the building of the railway was considered and discounted when the right-of-way was acquired.

APPEAL.

*Cook, McGowan & Foote,* for plaintiff in error.
*Edward Bushnell, Esq.,* for defendant in error.

### GRANT, J.

Owing to calls upon our time, over which just now we have little control, and which counsel will appreciate, as well as because they are themselves so thoroughly conversant with the facts, we shall do little more here than state our position in terms of conclusion.

The case is in equity, to restrain the location of a crossing over the right-of-way and tracks of the plaintiff company in the city of Cleveland.

The defendants claim to be entitled to the crossing on two grounds:

First, because the statute gives them the right to it;

Second, because it is a necessity to them.

The statute thus referred to and which is claimed to be the enabling act for the location of the crossing in this case, has in

its history passed through various forms and changes as to its verbiage, but probably not much affecting its purpose or application to the circumstances with which we have to do here. As first passed in 1859, it read as follows:

"Every railroad is required to make and maintain a sufficient number of suitable crossings for the accommodation of the public and of persons living near the line of such railroad. * * Any person or persons desiring a private crossing or crossings and cattle guards, as contemplated by this act, shall be responsible for one-half the expense of constructing and maintaining same." (S. & C. 331.)

The amendment of 1871 is not material here.

In 1874 the act was changed to the following form of preamble recitation:

"Any farmer or person owning fifteen or more acres of land in one body, through which such railroad may or does pass, and which is so situated that the owner thereof can not use one ot said crossings in a public street, road, lane or highway, over said railroad in passing from his land on one side of said railroad to that on the other without great inconvenience," and continuing with provisions and requirements calculated to make effectual its purpose for the benefit of the farmer or land proprietor.

When the Ohio laws were revised in 1880 the word "farmer," as the alternative of the owner of the acreage, was omitted, probably in the interest of brevity and word-compression.

In its present form, the statute is in the following language:

"When a person owns fifteen or more acres of land in one body, through which a railroad passes, and which is so situated that he can not use a crossing in a public street, lane, road or other highway, in going from his land on one side of the railroad to that on the other side without great inconvenience, at his request, and within four months thereafter, the company or person operating it, at the expense of such company or person shall construct a good and sufficient private crossing across such railroad and the lands occupied by the company, between the two pieces of land to enable such landowner to pass with a loaded team, and over which he may go at all times when such railroad is not being used at the crossing, or so near to it as to render passing thereat dangerous." Section 8858 G. C.

Upon a full consideration of the language of this enactment, in the successive stages of its development, the purposes we think it was intended to subserve, and the public policy underlying it, we have reached a substantial agreement with the plaintiff's contention that the legislative end in view was a farm crossing. The amount of land designated as the least that could be served by the crossing would, it appears to us, be quite irrational if an industrial use was contemplated by it. Service tributary to a tract as small as fifteen acres would take care of the gardener or trucker, while the larger farmer of course would share in it, and the well-known policy of the state to encourage agriculture would be promoted by the legislation. Judge Shauck's use of the term in the *Gratz* v. *Lake Erie & W. Ry.*, 76 Ohio St. 230 [81 N. E. 239], as well as the syllabus, would have been more guarded had not the court regarded the crossing as a "farm crossing" in the sense we are putting upon it.

Our opinion also is that the statute intended to deal with a reciprocal or interdependent use of the land on both sides of the plaintiff's right-of-way.

We fail to find evidence in the case that, if the crossing were allowed, the two parcels could normally or providently be used together for agricultural purposes.

Their appropriate use, for any purpose, so far as appears, is a separate use; for farm purposes, practically speaking and having regard to constant liability during farming hours to the paramount use of the railway company, the advantage of the crossing would be negligible.

Starting from the premise that the crossing contemplated by the statute is a farm crossing, we reach without difficulty the conclusion that the crossing sought by the defendants is inadmissible under that law.

Coming to the remaining contention that the crossing ought to be allowed as a way of necessity, the difficulties accompanying that view are, as we think, so considerable as to be insuperable.

The tract on either side of the company's right-of-way is accessible from another highway.

There is an outlet to each; not as short, not as direct, it is true, as the cut proposed across the tracks, but still such as to

Cleveland, C., C. & St. L. Ry. v. Bradford.

afford means of approach and egress, inconveniently, perhaps, but far safer than by the direct route, which appears to us to be in practical disobedience to the wholesome public policy in Ohio against grade crossings in cities; it looks to us as if it would be not far from a nuisance, if permitted, taking into account the dominant use by the railroad in operating its trains at that point.

It is not certain that the inconvenience said to result to the defendant's property from the tracks being interposed between the two parts of it, was not considered and discounted when the parties sold and got their pay for the right-of-way which served to split the theretofore use of the whole. If the right-of-way had been acquired by appropriation instead of purchase, the jury by a separate verdict must have returned the entire lessened value of both tracts involved here, by reason of the right-of-way being interposed and cutting them off from the access which the defendants are seeking to restore by the crossing claimed; and the company would have been required to pay that lessened valuation. Perhaps it did pay for it.

The lessened value could have been estimated upon the basis of any reasonable use to which the severed parcels could in the reasonable future have been put, if instead of being cut in twain they had been left as one parcel.

We are not, however, founding our conclusion on this consideration. What we do say at this point is that the proof fails to justify a way of necessity, under the circumstances of this case.

We find the equities with the plaintiff. A perpetual injunction is awarded. Decree accordingly.

A request has been made for a finding of facts. As claimed by the requesters and extracted from what we have now said, a draft of such finding may be prepared by counsel asking for it, and submitted to the other side, but to the court in any event, for approval if correct.

DUNLAP and WASHBURN, JJ., concur.